Fox Paine & Company, LLC and Saul A. Fox, Plaintiffs,

against
Houston Casualty Company, and Equity Risk Partners, Inc., Defendants.


52607/2014 

BOIES, SCHILLER & FLEXNER, LLP
Attorneys for Plaintiffs Fox Paine & Company, LLC and Saul A. Fox
By: Courtney R. Rockett, Esq.
Patrick J. Rohan, Esq.
Ievgeniia P. Vetrenko, Esq. 
333 Main Street
Armonk, New York 10504
HOLLAND & KNIGHT, LLP
Attorneys for Defendant Equity Risk Partners, Inc.
By: Mark L. Antonecchia, Esq.
31 West 52nd Street
New York, New York 10019
SHIPMAN & GOODWIN LLP Attorneys for Defendant Houston Casualty Company 
By: Michael T. Conway, Esq.
Mark K. Ostrowksi, Esq.
Alexander R. Karam, Esq.
400 Park Avenue — Fifth Floor
New York, New York 10022
DLA PIPER LLP (US)
Attorneys for Defendant Professional Indemnity Agency, Inc.
By: Robert C. Santoro, Esq.
Aidan M. McCormack, Esq.
1251 Avenue of the Americas — 27th Floor
New York, New York 10020-1104


Alan D. Scheinkman, J.

Plaintiffs Fox Paine & Company, LLC ("FPC") and Saul A. Fox ("Fox") (collectively "Plaintiffs") move, pursuant to CPLR 3124, for an order compelling Defendant Houston Casualty Company (hereinafter "HCC") to produce complete and unredacted copies of documents responsive to Plaintiffs' First Notice for Discovery and Inspection which Plaintiffs allege were improperly withheld as privileged. Defendant HCC opposes the motion.
FACTUAL AND PROCEDURAL BACKGROUND
This action arises out of the disintegration of the relationship between equal partners Plaintiff Fox and W. Dexter Paine, III ("Paine") in Plaintiff FPC, a private equity management firm, a disintegration which produced multiple litigations and an arbitration. 
In the present action, Plaintiffs challenge Defendants' handling and payment of claims under FPC's private equity professional insurance policy ("FPC Policy") to Paine, the Paine Family Trust, Paine & Partners, LLP ("P & P") (a private equity management firm formed by Paine), former FPC executives who joined P & P, and Mitchell S. Presser, Esq. ("Presser"), FPC's former counsel who also joined P & P (collectively "the Paine Parties"), for their litigation costs and settlement with Plaintiffs. Defendant Equity Risk Partners, Inc. ("ERP") was FPC's insurance broker who procured the FPC Policy and excess insurance policies at issue. HCC issued FPC's Policy and was FPC's primary insurer. Plaintiffs assert causes of action for breach of contract against both HCC and ERP, and a cause of action for breach of the covenant of good faith and fair dealing against HCC. 
The Court has decided multiple motions in this action, including a motion [*2]by Defendants to dismiss and a motion by Plaintiffs for leave to serve a second amended complaint. After motion practice, the Court dismissed the First Amended Complaint insofar as asserted against ERP and Professional Indemnity Agency, Inc. ("PIA"), who administered the FCP Policy, and dismissed certain causes of action asserted against HCC. The Court denied the motion to the extent it sought to dismiss the causes of action against HCC for breach of contract and breach of covenant of good faith and fair dealing. The Court granted Plaintiffs leave to serve a second amended complaint to the extent Plaintiffs could add a breach of contract claim against ERP, which Plaintiffs did.
A. Plaintiffs' Allegations in the Second Amended Complaint
According to the Second Amended Complaint, the allegations of which must be assumed to be true for present purposes, Fox was the founder of FPC and Paine was FPC's President from 1997 through December 2007. Paine was responsible for the management of Fund I, while Fox was responsible for the management of Fund II. By 2006, Fund I was "largely wound down and Paine wanted to raise a third fund [and] Fox was disinclined ... because FPC had yet to invest much of Fund II's committed capital" (Affirmation in Support of Jeremy C. Vest, Esq., Ex. 1 at ¶ 29 ["Revised Second Amended Complaint"]). In 2006, Paine created a new company to manage Fund III, which was initially referred to as "Newco," then as "Fox Paine Management III," and finally as "Paine & Partners, LLP" ("P & P"). Fox elected not to assume a managerial role in P & P, but agreed to invest $5 million in return for a 25% carried interest in Fund III and an equity investment in P & P. Fox permitted certain FPC executives, including Amy Ghisletta ("Ghisletta"), FPC's CFO, to render services to P & P as well as FPC on a temporary basis (id. at ¶¶ 30, 32). In February 2006, Fox and Paine entered into a management agreement to govern the operations of FPC and P & P, which provided, among other things, that "FPC employees providing services to P & P would remain employees of FPC, and Paine and P & P would refrain from soliciting or hiring away any FPC employees" (id. at ¶ 31). 
From 1997 to November 2006, Presser was an attorney at Wachtell Lipton Rosen & Katz. Fox retained Presser to act as corporate counsel for FPC and to represent Fox in non-FPC matters. In or about September 2006, Paine agreed to make Presser a partner in P & P, and Presser ceased providing services to FPC. Presser officially joined P & P in November 2006. Plaintiffs allege that beginning in or about November, 2005, Presser aided and abetted breaches of fiduciary duty to FPC by Paine and FPC's former executives. 
In October 2005 to 2007, FPC engaged ERP, an insurance broker, to manage Plaintiffs' professional liability insurance needs. ERP held itself out to have expertise in insurance brokerage, risk management and claims handling and oversight for the private equity industry (id. at ¶ 34). In September 2006, ERP procured a primary private equity professional policy ("PE") for FPC underwritten by HCC and administered [*3]by PIA[FN1]
 ("FPC Policy") (id. at ¶ 41). The FPC Policy provided coverage of up to $10 million on claims for "Losses" (defined to include damages and settlements) and "Costs, Charges and Expenses" (defined to include reasonable and necessary legal fees, expenses and expert fees) incurred in connection with FPC's private equity activities (id. at ¶ 41). 
Under the FPC Policy, FPC is designated as the primary "Insured Organization" and Funds I, II and III and their constituent organizations listed as additional named insureds (id. at ¶ 42). Plaintiffs contend that P & P (formerly "Newco" and "Fox Paine Management III") are not insured organizations (id. at ¶ 43). Plaintiffs further contend that the FPC Policy only covers officers and employees as additional insureds when they were acting on behalf of FPC (id. at ¶ 44). Accordingly, Plaintiffs assert that Paine and the former executives of FPC did not qualify as additional insureds for activities not taken on behalf of FPC (id.). 
Further, say Plaintiffs, the FPC Policy also excludes coverage for any claim of an insured arising out of the service of the insured as a director, officer, board representative, partner, managing member or trustee of any entity other than FPC (id. at ¶ 45). The FPC Policy also excludes coverage for litigation between insureds, but Plaintiffs contend that the exclusion is subject to an exception that affords FPC and Fox coverage for (1) claims brought by interest holders in FPC or its affiliated private equity funds or partnerships, and (2) claims for wrongful employment practices allegedly taken by FPC and its executives on behalf of FPC (id. at ¶¶ 51-52, citing HCC Policy at Clauses II[T], IV[I][3], Endorsements 13 and 14). The FPC Policy also provides that when more than one claim involves the same or interrelated Wrongful Act, they shall be deemed to constitute a single claim (id. at ¶ 56, citing HCC Policy at Clause V[D]).
In September 2006, ERP procured three excess PE Policies on behalf of FPC ("Excess Policies"). Two excess policies were obtained from Twin City Fire Insurance Company ("Twin Fire"), which each provided $10 million of coverage, and a third excess policy was obtained from St. Paul Mercury Insurance Company ("St. Paul"), which provided $20 million in coverage (collectively "Excess Insurers" and "Excess Policies"). These Excess Policies incorporated the terms and conditions of the HCC Policy (id. at ¶ 59).
Plaintiffs allege that Paine and certain executives of FPC, including Ghisletta, engaged in conduct adverse to FPC's interests in 2006. Plaintiffs further allege that former executives of FPC, including Ghisletta, secretly terminated their employment with FPC and assumed roles at P & P in April and August, 2006, respectively, while continuing to hold themselves out as employees of FPC through May and December 2007, respectively (id. at ¶¶ 20-22). Specifically, the former executives began "to countermand Fox's instructions and to abandon FPC in favor of P & P and to enrich themselves at the expense of FPC and the Fund II investors" (id. at ¶ 61). 
On August 27, 2007, Plaintiffs commenced litigation against Paine, the Paine Family Trust and P & P ("Paine Defendants") in Delaware Chancery Court ("Fox-Paine Litigation") (id. at ¶ 62). In that complaint, Plaintiffs alleged that the Paine Defendants breached their contractual and fiduciary obligations to FPC, Fund II and Fox by raiding FPC employees, attempting to force the sale of Fund II assets, disparaging Fox, and preventing FPC's new financial personnel from obtaining information (id. at ¶ 63). Plaintiffs allege the complaint further made it clear that Ghisletta and other former FPC executives had terminated their employment with FPC to work exclusively for P & P, and had engaged in acts adverse to FPC (id.). On September 14, 2007, the Paine Defendants countersued Fox alleging breach of contract and breach of fiduciary duties to FPC (id. at ¶ 64). 
On November 6, 2007, Ghisletta, acting in her capacity as FPC's CFO, submitted claim notices to ERP under each of the insurance policies held by FCP (FCP Policy and Excess Policies) regarding the Fox-Paine litigation on behalf of all possible insureds, and ERP forwarded the claim notices on behalf of FPC to PIA, as claims administrator for HCC, and to FCP's Excess Insurers (id. at ¶¶ 66-67). Plaintiffs contend that ERP, PIA, HCC and the Excess Insurers never gave notice to FPC of the claim and continued to act at the direction of Ghisletta, even though the pleadings made it clear that (1) Ghisletta was no longer employed by or loyal to FPC, and (2) Paine and the other former executives of FPC were not acting on behalf of or in the interest of FPC (id. at ¶ 70). 
On December 3, 2007, Fox and Paine entered into a settlement agreement to resolve the litigation and effect a complete separation of FPC and Fox from Paine and P & P, among other things ("2007 Settlement Agreement"). The settlement provided for, among other things: (1) Paine's transfer to Fox of Paine's interest in FPC and Fund II; (2) Fox's transfer of his interest in P & P and Fund III to Paine; and (3) the retention by P & P of the employees it had hired away from FCP, including the former executives (id. at ¶ 73). A copy of the 2007 Settlement Agreement was provided to ERP, HCC and the Excess Insurers (id. at ¶ 76). 
Motions and cross-motions were made to enforce the 2007 Settlement Agreement (id. at ¶¶ 78-79). Fox commenced an arbitration proceeding against FPC's former executives for breach of fiduciary duty, unjust enrichment, and aiding and abetting Paine's breaches of fiduciary duty based upon their acts to further P & P's interests to the detriment of FPC ("FPC's Arbitration") (id. at ¶ 81). Additional motions to enforce the 2007 Settlement Agreement and a motion to enjoin the FPC Arbitration followed (id. at ¶ 82-83).
On May 15, 2009, Presser, on behalf of the Paine Parties, sent a letter on P & P letter head to PIA, with a copy to ERP, demanding coverage under insurance policies obtained from HCC by P & P ("P & P Policies") on behalf of FPC's former executives for their defense and liability costs in the FPC Arbitration. PIA advised Presser it had forwarded the P & P claim to counsel for PIA and HCC for review (id. at ¶¶ 88-89). 
It is alleged that on July 7, 2009, Presser wrote to counsel for PIA and HCC regarding the status of the P & P claim under the P & P Policies and regarding [*4]the status of the FPC claim under the FPC Policy, which Presser falsely asserted was made on behalf of the Paine Parties and that only the Paine Parties were seeking the proceeds of the FPC Policy (id. at ¶ 90). Plaintiffs contend that the demand for proceeds under the FPC Policy for the Paine Parties was wrongful because (1) P & P and the Paine Family Trust were never insureds, (2) Paine and the former executives were not additional insureds, (3) the acts underlying the Fox-Paine litigation were adverse to FPC, (4) after the execution of the 2007 Settlement, the Paine Parties had no remaining interest in FPC, and (5) neither Presser nor anyone else at P & P was authorized to address the matters under FPC's Policy (id. at ¶ 91).
As to ERP, Plaintiffs claim that it knew that the Paine Parties' demand for the proceeds of the FPC Policy was improper since, inter alia, it procured both the FPC Policy and the P & P Policies and was aware of the underlying facts in the Fox-Paine Litigation, including the 2007 Settlement Agreement and subsequent motion practice to enforce the Settlement Agreement (id. at ¶ 92). Plaintiffs assert that ERP breached its contractual and fiduciary duties to Plaintiffs by failing to advise FPC of the improper demand by the Paine Parties, and providing its analysis of the FPC claim to Presser based upon its understanding that he was the representative for the Paine Parties and FPC even though Presser did not confirm he was FPC's representative as requested by ERP (id. at ¶¶ 93, 97, 99). 
By letter to Presser dated September 4, 2009, counsel for HCC denied coverage for the Paine Parties under the FPC's claim citing, among other reasons: (1) the FPC Policy's "insured v insured" exclusion; (2) the fact that the Paine Family Trust was not an insured under the FPC Policy; and (3) claims asserted by the Paine Parties in the Fox-Paine Litigation and in post-settlement motions were offensive claims and not covered under the FPC Policy which limited costs, charges and expenses to those incurred in the defense of claims. Therein, counsel for HCC also asked Presser to advise immediately if Presser was not the representative of FPC, but Presser did not respond to the request (id. at ¶¶ 97-99). Plaintiffs contend that even a cursory review of the Fox-Paine Litigation file in the possession of counsel for HCC, PIA and ERP would have revealed that neither Presser, Paine nor Ghisletta were designated insurance representatives for FPC (id. at ¶ 100).
On October 15, 2009, ERP wrote to PIA on behalf of the Paine Parties regarding a lack of responsiveness regarding the P & P claim under the P & P Policies. In late October 2009, HCC denied P & P's claim under the P & P Policies with respect to the FPC Arbitration (id. at ¶ 102-103). 
Plaintiffs contend that between late October 2009 and February 2010, P & P and ERP continued to demand coverage from PIA and HCC under both the FPC claim and Policy and under the P & P claim and Policies (id. at ¶ 104). 
On February 23, 2010, HCC advised P & P that it was retracting its denial of coverage for the FPC claim and the P & P claim based upon its finding that the Fox-Paine Litigation and FPC Arbitration constituted "Interrelated Wrongful Acts" under the FPC Policy (id. at ¶ 105). Plaintiffs contend that HCC continued to deny coverage for FPC and Fox, but distributed the entire $10 million in insurance proceeds from the FPC Policy to the Paine Parties. HCC did not pay the Paine Parties with [*5]proceeds from the P & P Policies, but instead found that the P & P claim was "interrelated" with the FPC claim and paid the claim only from the proceeds of the FPC Policy (id. at ¶¶ 106-108). 
On May 20, 2012, Fox filed action against certain former executives for FCP for breach of contract in California, Illinois and Texas (id. at ¶109). Both Excess Insurers, Twin City and St. Paul, denied the Paine Parties' claims for coverage for the State Court Actions (id. at ¶ 111). 
On May 25, 2012, Plaintiffs commenced an action against Presser for tortious interference with contract, conspiracy, aiding and abetting tortious action, and unfair competition, based upon Presser's alleged inducement of Paine and the former executives of FPC to acquire and transfer Fund II interests in violation of the FPC partnership agreement and the 2007 Settlement Agreement (id. at ¶ 112). 
In August, 2012, Plaintiffs executed a settlement agreement with the Paine Parties pursuant to which the Paine Parties transferred interests to Fox valued at approximately $23 million, and resolved the Fox-Paine Litigation, the FPC Arbitration, the State Court Actions against the former FPC executives and the Presser Action (id. at ¶ 113). Plaintiffs contend that they would have never have entered the 2012 Settlement Agreement if they had known about the Paine Parties' conduct with respect to the insurance coverage (id. at ¶ 114).
Thereafter, on September 14, 2012, the Paine Parties met with counsel for Twin City and sought coverage under the FPC Policies for all costs incurred in the litigation matters and for the $23 million settlement amount. Twin City again denied coverage under the Excess Policy issued to FPC for all litigation (id. at ¶¶ 115-116). 
On June 12, 2013, the Excess Insurers filed actions in the Northern District of California against the Paine Parties, including FPC's former executives, FPC and others seeking a declaration of no coverage under the Excess Policies issued to FPC. Plaintiffs contend that, as a result of those actions, they learned for the first time that ERP, PIA and HCC had been communicating with the Paine Parties in connection with coverage under the FPC Policy, and that HCC had paid out the entire proceeds of the FPC Policy to the Paine Parties. Plaintiffs assert that only the claim notices of Ghisletta and ERP submitted on behalf of FPC in November 2007 had been submitted to them, and that none of the other claim correspondence had been submitted to them (id. at ¶¶ 117-118). Plaintiffs contend that HCC's wrongful provision of coverage to the Paine Parties deprived Plaintiffs of the benefit of their own insurance and assisted the Paine Parties in litigations adverse to Plaintiffs, which forced FPC's Excess Insurers to bear obligations that HCC otherwise would have to bear under the P & P Policies (id. at ¶¶ 199-120).
B. The Pleaded Causes of Action
The First Cause of Action is for breach of contract against HCC. Therein, Plaintiffs assert that they performed all their obligations under the HCC Policy and that they were "entitled to a defense and indemnity for the claims asserted against them by the Paine Parties in the Fox-Paine Litigation" and the related litigations because the [*6]allegations contained therein constituted "Interrelated Wrongful Acts" within the meaning of the HCC Policy (id. at ¶¶ 125-126). Namely, they contend they were entitled to coverage under FPC's Policy insuring Wrongful Acts in connection with Private Equity Activities (Agreement Coverage A), Wrongful Acts by the Insured Organization or the Insured Persons in their respective capacities (Agreement Coverage C), and Wrongful Employment Practices (Agreement Coverage E ) (id. at ¶ 127). Further, Plaintiffs contend that because the Paine Parties were not insureds with respect to the Fox-Paine Litigation, the "insured v. insured" exclusion did not apply (id. at ¶ 128). But even if it did apply, Plaintiffs claim that one or more exceptions to the exclusion would have rendered the exclusion inapplicable (i.e., exceptions for claims brought by interest holders in FPC or its affiliated private equity funds or partnerships whether or not such interest holders also qualified as insureds under the policy, and claims for Wrongful Employment Practices) (id. at ¶ 129).
With regard to Plaintiffs' performance, they allege that they submitted the claim via Ghisletta's letter dated November 6, 2007. Alternatively, they argue that if Ghisletta purported to submit the claim on behalf of the Paine Parties, "she did so in violation of her fiduciary duties to FPC with the result that, by operation of law, the FPC Claim, and any proceeds flowing therefrom, belongs to and inures to the benefit of FPC, as Ghisletta's principal" (id. at ¶¶ 129-130). Further, Plaintiffs contend that upon receipt of the claim from FPC's agent ERP on November 7, 2007, "HCC had a duty to make diligent inquiry into the claims and counterclaims asserted in the Fox-Paine Litigation and its ensuing satellite litigation to determine whether any insureds under the HCC policy, including FPC and Fox, were entitled to defense and indemnity. HCC is also chargeable with knowledge of any facts that such a diligent inquiry would have revealed" (id. at ¶ 134). Thus, Plaintiffs assert that HCC was responsible, based on its investigation of the pleadings in the litigations to know that the claim submitted was on behalf of FPC and its legitimate executives and that if Ghisletta purported to submit the claim on behalf of the Paine Parties, it was done in breach of her fiduciary obligation and, by operation of law, the claim belonged to FPC and Fox as the sole additional insured regardless of how it was presented by Ghisletta. Further, Plaintiffs allege that Paine and FPC's former executives had no colorable claim to coverage since: (1) any coverage was barred by the insured v. insured exclusion; (2) neither Paine nor the former executives qualified as additional insureds under the HCC Policy because none of the activities or misconduct for which they were accused was carried out on behalf of and for the benefit of FPC; and (3) FPC's Policy excluded from its coverage claims based on activities undertaken by Paine and the former executives on behalf of P & P or any entity other than FPC (id. at ¶¶ 135-138).
It is Plaintiffs' contention that HCC breached the FCP Policy by wrongfully denying Plaintiffs defense and indemnity under the FCP Policy in connection with the Fox-Paine Litigation and the related proceedings. In addition, based on HCC's knowledge of the above facts (i.e., that the Paine Parties had no claim under the Policy), Plaintiffs contend that HCC breached the FCP Policy by (1) treating the Paine Parties' claims submitted under the P & P Policies as though they had been submitted under FPC's Policy, and (2) by making the unauthorized payment of the FCP Policy's [*7]proceeds to the Paine Parties (id. at ¶¶ 140-141, 143-144).
Plaintiffs' Second Cause of Action is for breach of the covenant of good faith and fair dealing against HCC. Plaintiffs contend that HCC breached the implied covenant of good faith and fair dealing by disbursing the entire proceeds of the FPC Policy to the Paine Parties insofar as HCC and PIA were fully aware, based upon their investigation and review of the files and pleadings in the Fox-Paine Litigation, that: (1) Plaintiffs had the only valid claim to those proceeds; (2) the Paine Parties had no colorable claim to coverage and were not entitled to coverage since they were being sued by Plaintiffs because the actions of which they were accused were adverse to Plaintiffs and were taken in the capacity as agents for and on behalf of P & P, not FPC; and (3) HCC's conduct left Plaintiffs bereft of insurance coverage under the HCC Policy and fostered, encouraged and funded the Paine Parties' ongoing litigation against Plaintiffs, HCC's own insured (id. at ¶ 153). Plaintiffs also contend that HCC breached the covenant of good faith and fair dealing by wrongfully treating the Paine Parties' subsequent claims submitted under the P & P Policy as claims submitted under the FPC Policy issued by HCC (id. at ¶¶ 154-155).
The Third Cause of Action asserted by Plaintiffs is for breach of contract against ERP. Plaintiffs contend that FPC retained ERP, who held itself out to have expertise in risk management, insurance brokerage, claims handling, claims advocacy and claims oversight for the private equity industry, for claims administration and claims resolution of PE policies for the 2006 and 2007 calendar year renewal terms (id. at ¶¶ 160-161, 165-169, 173-175). Plaintiffs contend that, thereafter, ERP forwarded to FPC a primary binder of insurance from HCC and binders of insurance from each Excess Insurer for the 2006 calendar year (id. at ¶ 170). Plaintiffs contend that Fox was a named intended third-party beneficiary of FPC's contract with ERP (id. at ¶ 182). Plaintiffs contend that ERP breached its contract with FPC by taking direction from Ghisletta, who submitted a claim to ERP on behalf of FPC under the HCC Policy on November 6, 2007, by continuing to take direction from Ghisletta after it received the pleadings in the Fox-Paine Litigation which made it clear that Ghisletta was no longer acting in FPC's best interest and was acting in a manner adverse to FPC's interests. Plaintiffs also contend that ERP breached its contract with FPC by failing to notify FPC or Fox or FPC's legitimate officers, executives or agents identified in the Fox-Paine Litigation pleadings that Ghisletta had submitted the FPC claim seeking coverage for any and all possible insureds (id. at ¶¶ 183-188). Finally, Plaintiffs contend that ERP breached its contract with FPC by actively conspiring with Ghisletta and others loyal to FPC's former executives to convert FPC's claim into a claim to benefit the Paine Parties, who ERP knew were only properly covered by the P & P Policies and were actively competing against and engaged in a litigation against FPC (id. at ¶¶ 190-195). Accordingly, Plaintiffs contend that ERP failed to perform contractual duties owed to Plaintiffs, including (1) advocating for Plaintiffs and protecting Plaintiffs' interests under the Policies it had procured for FPC, and (2) advising FPC of the Paine Parties' improper demands for coverage; and by conspiring with the Paine Parties to obtain proceeds under FPC's Policies, to injure Plaintiffs and to promote ERP's new partnership with the Paine Parties (id. at ¶¶ 196-201). 
C. Plaintiffs' First Notice for Discovery and Inspection and HCC's Privilege Log
Plaintiffs' First Notice for Discovery and Inspection dated December 31, 2014, demands 15 categories of documents (Aff. of Jeremy C. Vest, Esq., Ex. 5). The Demands include the following: (1) communications between Defendants or their counsel, on the one hand, and the Paine Parties or their counsel, on the other hand, concerning the FPC Policy, the FPC claim, the P & P claims, or the Fox-Paine Litigation; (2) communications between Defendants or their counsel and ERP or its counsel; (3) documents concerning the initial determination to deny coverage to the Paine Parties' under the FPC Policy and the reversal of the denial and determination to provide coverage to the Paine Parties' under the FPC Policy; (4) all documents evidencing or concerning the disbursement of proceeds under the FPC Policy; and (5) all documents concerning Defendants' decision to provide coverage for the P & P claims under the FPC Policy.
In addition to providing certain documents, HCC served Plaintiffs with a privilege log containing two broad categories of withheld documents which both list the document types as "E-mails, PDFs, Word Documents, and Excel Files" (id., Ex. 10). For the first category, it lists the reason for withholding as "Attorney-Client/Work Product." For the second category, it lists the reason for withholding as "Common Interest/Joint Defense/Attorney-Client/Work Product." The privilege log does not list each document withheld or indicate how many documents HCC withheld. Rather, each of the two categories lists dozens of recipients/senders/copyees and multiple "Category Descriptions," and does not indicate which of the individuals listed as recipients/senders/copyees were involved in the documents purportedly contained within the category descriptions.
The first category has a date range of November 20, 2007 to April 1, 2015. It lists as the sender, recipient or copyee dozens of attorneys from Tucker Ellis and DLA Piper and dozens of employees of HCC, and lists 15 "category descriptions." Those category descriptions include: (1) "Communications with inside counsel providing, requesting or reflecting potential coverage issues and questions, potential litigation over insurance matters, and actual litigation over insurance matters"; (2) "Communications between outside counsel regarding coverage issues and questions ..."; (3) "Communications regarding coverage litigation status updates ..."; (4) "PIA/HCC internal claim log with notes regarding legal advice from outside counsel, payment of coverage counsel fees and notes regarding defense of underlying litigation between Fox and the Paine Parties provided by the Paine Parties' lawyers"; and (5) "Communications regarding coverage analysis ..." (id.).
The second category has a date range of June 9, 2009 to December 20, 2014. It lists dozens of attorneys from Tucker Ellis ad DLA Piper, as well as four employees of HCC, and dozens of "Qualified Third-Parties," including various counsel (Paul Weiss - counsel for Paine Parties), representatives/partners of P & P, and representatives of ERP. The second category includes three category descriptions. The first category description lists communications from defense counsel for the Paine Parties defending the underlying litigations, arbitrations and mediations brought by Fox [*8]with six subcategories, including (1) litigation status updates, (2) litigation evaluations and assessments, (3) defense strategies, and (4) settlement offers by Fox, evaluations of the settlements and potential responses and strategies as to settlement offers. The second category description is "Communications with defense counsel for the Paine Parties regarding a tolling agreement and interim defense funding agreement, and defense strategy of the underlying Fox v. Paine litigations, arbitrations and mediations" (id.). The third category description is drafts and final version of the Interim Defense Funding Agreement.
D. Present Motion

On November 19, 2015, this Court held a pre-motion conference at the request of Plaintiffs, who sought to make a motion to compel HCC to produce documents which it withheld as privileged. At the conference, HCC's counsel asserted that HCC had produced documents regarding coverage, but had not produced the communications between HCC and the Paine Parties' counsel relating to the underlying defense in the Fox-Paine Litigation (Aff. of Robert Santoro dated Jan. 21, 2016, Ex. B [Tr. of Court conference held Nov. 19, 2015] at 14:23-25, 15:1-6), including documents relating to the settlement payment (id. at 16:21-25). HCC's counsel asserted that one letter regarding the settlement payment was withheld "as privileged as part of common interest defense and settlement" (id. at 16:23-25). HCC counsel also asserted that the Interim Defense Funding Agreement between HCC and the Paine Parties was withheld on the ground that it contained details about the Paine Parties' defense in the Fox-Paine Litigation (id. at 18:20-23). 
Plaintiffs also sought the correspondence between HCC and the Excess Insurers, and this Court directed HCC to submit an affidavit as to the search conducted for the correspondence (id. at 20:5-14). 
Plaintiffs further challenged the redactions to HCC's claim log arguing that it was almost completely blacked out (id. at 21). HCC's counsel argued that the claim log was redacted to the extent it deals with the Paine Parties' defense in the Fox-Paine Litigation and falls within the common-interest privilege (id. at 25:25, 26:1-3). 
As to coverage documents in the file of Aidan McCormack, coverage counsel and counsel in this action, HCC did not produce communications from the Paine Parties regarding their strategy for settling and their defense costs, which HCC argued are privileged under the common-interest privilege and asserted that the Paine Parties' are objecting to the production (id. at 34-35). HCC then agreed to confirm that all coverage communications were produced (id. at 36:13-14). HCC also agreed to submit a letter from Steve Wagner, the Paine Parties' counsel dated June 26th (id. at 37:11-20). Plaintiffs also sought additional letters from Wagner to HCC and the Excess Insurers (id. at 37:23-25, 38:1-7). HCC's counsel asserted they had searched HCC's files, but had not searched the law firm files (id. at 38:8-9). HCC's counsel argued that the letters dealt with the Paine Parties' counsel's evaluation of settlement and were privileged under the common-interest privilege despite HCC's reservation of rights (id. at 44:3-11). This Court then indicated that an in camera review of the documents [*9]regarding settlement of the Fox-Paine litigation would be needed, but asked the parties to "whittle down" the documents to be reviewed (id. at 47:7-22). HCC's counsel also agreed to review communications between HCC and th Excess Insurers which were listed on HCC's privilege log as to whether they relate to the settlement discussions as to who would pay into the settlement (id. at 54-55). 
An arrangement was made for HCC to submit for in camera review: (1) the letter regarding settlement payment from the Paine Parties' counsel dated June 26, 2012 to counsel for HCC and the Excess Insurers, and all related correspondence (id. at 17:6-10, 37); (2) Interim Defense Funding Agreement (id. at 19:22-25); and (3) HCC's claim log (id. at 26-27). 
After the pre-motion conference, HCC submitted the following documents for in camera review: (1) a letter from the Paine Parties' counsel Jaren Janghorbani to HCC's counsel, Aidan McCormack; (2) letters and emails from Stephen Wagner, counsel for the Paine Parties, to Aidan McCormack, counsel for HCC, and the Excess Insurers, including the letter dated June 26, 2012; (3) the Interim Defense Funding Agreement between the Paine Parties and HCC; and (4) HCC's claims log. 
At a subsequent court conference held on January 8, 2016, the Court advised the parties that an informal in camera review of the documents had been completed. The Court then gave the parties the option to proceed informally and accept the decision of the Court or proceed with formal motion practice. Plaintiffs elected to proceed with the present motion. 
PLAINTIFFS' CONTENTIONS IN SUPPORT OF THE MOTION
Plaintiffs contend that the Court should compel HCC to produce the following documents withheld by HCC on the ground of privilege:
(1) HCC's unredacted Claims Log;
(2) The Interim Defense Funding Agreement between HCC and the Paine Parties, including all drafts and iterations thereof and communications relating thereto;
(3) All communications with the Excess Carriers (Insurers) relating to the claims under the FPC Policy, HCC's initial denial, coverage and its subsequent change in coverage position with respect to the Paine Parties;
(4) All communications between HCC and its counsel, on the one hand, and the Paine Parties and ERP and their respective counsel, on the other hand, relating to HCC's denial of coverage, subsequent change in coverage position, and reimbursement of the Paine Parties' legal costs and funding of the settlement in the underlying Fox-Paine Litigation[FN2]
; and
(5) All internal HCC communications relating to the claims under the FPC [*10]Policy, HCC's denial of coverage, subsequent change in coverage position, and reimbursement of the Paine Parties' legal costs and funding of the settlement in the underlying Fox-Paine Litigation. Plaintiffs assert that the following claimed privileges are inapplicable to the HCC documents: (1) attorney-client privilege; (2) common-interest/joint defense privilege; and (3) attorney work product privilege. Plaintiffs further assert that any privilege for material prepared in anticipation of litigation was waived and, in any event, the privilege is inapplicable. Finally, Plaintiffs contend that HCC is barred from asserting a privilege in light of FPC's claims of bad faith. 
A. Attorney-Client Privilege is Inapplicable
With respect to the claim of attorney-client privilege, Plaintiffs contend that, under New York law, communications between the insured and the insurer are not protected by the attorney-client privilege except where the policy includes a duty to defend and the insurer appoints counsel for the insured, which is not the case here. Plaintiffs assert that it is undisputed that the FPC Policy at issue is only an indemnity policy and HCC had no duty to defend the Paine Parties and did not provide a defense for the Paine Parties, who retained their own counsel. Plaintiffs further contend that the subject communications were for the purpose of obtaining coverage as opposed to obtaining assistance with the defense of the Fox-Paine Litigation. 
Plaintiffs also contend that HCC's insurance payment with a reservation of rights created a conflict between HCC and the Paine Parties. Accordingly, Plaintiffs contend that since the conflict is wholly inconsistent with the requirement that of an attorney-client communication, since there is no expectation the communication will not be used against the client, HCC's assertion of attorney-client privilege is defeated. 
Finally, Plaintiffs contend that the Interim Defense Funding Agreement between HCC and the Paine Parties is not protected from disclosure as an attorney-client communication since its purpose was not to render legal advice. Rather, Plaintiffs assert that the Interim Defense Funding Agreement only set forth HCC's position with respect to the reimbursement of the Paine Parties' legal fees in the Fox-Paine Litigation. 
B. Common-Interest/Joint Defense Doctrine is Inapplicable
Plaintiffs contend that HCC's communications with the Paine Parties are not protected by the common-interest/joint defense doctrine because they did not share an identical legal interest, contrary to HCC's contention the they shared an interest in minimizing the Paine Parties' exposure in the underlying litigation. Plaintiffs assert that a common-interest privilege only arises where (1) the communication is an attorney-client communication, (2) which is made for the purpose of furthering an identical or nearly identical legal interest, as opposed to commercial interest, and (3) pertains to legal advice in pending or reasonably anticipated litigation. Plaintiffs contend that the withheld documents do not satisfy the foregoing requirements. Accordingly, Plaintiffs [*11]assert that the communications which HCC contends are protected by the common-interest privilege are subject to disclosure. 
Plaintiffs contend that the documents are not attorney-client communications seeking or rendering legal advice. Plaintiffs also contend that the interests of HCC and the Paine Parties were not aligned and were adverse, as evidenced by HCC's repeated reservations of rights and the substance and tone of the Paine Parties' communications with HCC. Plaintiffs argue that until HCC reversed its denial of coverage, HCC and the Paine Parties were operating under the possibility of future litigation between them, and the possibility remained in light of HCC's reservations of rights. 
Plaintiffs further contend that HCC and the Paine Parties did not share a legal interest sufficient to trigger the common-interest privilege. Plaintiffs assert that HCC's legal position with respect to the Paine Parties was unaffected by the outcome of the Fox-Paine Litigation because HCC never faced potential liability in that litigation. Rather, Plaintiffs assert that HCC's interest was solely a commercial one as its only interest was to limit exposure to the Paine Parties under the FPC Policy. 
Plaintiffs argue that there is no reason to expect that HCC and the Paine Parties shared legal advice in formulating a defense in the Fox-Paine Litigation. Plaintiffs note that the Paine Parties were represented by their own counsel, who owed no attorney-client duties to HCC. Plaintiffs further contend that any communications between HCC and the Paine Parties were coverage related and unrelated to request for, or the provision of, legal advice. 
Additionally, Plaintiffs contend that the Interim Defense Funding Agreement or drafts of the agreement and the communications relating to the agreement are not protected from disclosure under the common-interest privilege. Plaintiffs argue that the agreement was a commercial transaction and HCC and the Paine Parties did not have an "identity of interest" since each had an interest in making the terms of the transaction as favorable as possible to itself. 
C. Attorney Work Product Privilege Does Not Apply
Plaintiffs contend that the attorney work product privilege applies only to documents prepared by counsel in anticipation of litigation which are the product of the attorney's learning and professional skills, including legal research, analysis, conclusions, legal theory or strategy, and are prepared for the purpose of litigation. Plaintiffs further assert the reports prepared by insurance investigators, adjusters or attorneys before a decision regarding coverage is made are not privileged, even where the reports have a multi-purpose and motivated in part by the potential of litigation with the insured. Moreover, Plaintiffs contend that the applicability of the work product privilege turns on whether the material would have been prepared irrespective of the expected litigation. 
With respect to HCC's documents, Plaintiffs contend that they all relate to HCC's coverage position, including HCC's Claims Log, as well as communications and reports regarding HCC's investigation of the Paine Parties' claim and the rationale for its coverage positions, which would have been prepared regardless of the potential [*12]litigation with the Paine Parties. The Interim Defense Funding Agreement, Plaintiffs further argue, is not subject to the common interest privilege since it was not prepared for the purpose of trial preparation or strategy and was a transactional business agreement. 
Finally, Plaintiffs contend that even if HCC's withheld materials contained protected attorney work product, HCC waived the privilege by disclosing the material to the Paine Parties since HCC was operating under a reservation of rights and future litigation with the Paine Parties was a real possibility. 
D. Privilege for Materials Prepared for Trial was Waived or Inapplicable

Plaintiffs contend that since HCC failed to assert the privilege of trial preparation in its privilege log, HCC has waived any objection to the production based on the privilege, which it raised for the first time two months after serving the privilege log. 
Plaintiffs assert that, in any event, the privilege is inapplicable to the documents at issue. Plaintiffs contend that CPLR 3101(d) only applies to documents prepared primarily, if not solely, in anticipation of litigation, and HCC's documents, including those relating to coverage position, are "multi-purpose" documents motivated by business considerations. Therefore, Plaintiffs contend that the privilege does not apply to the documents. Plaintiffs also contend that the privilege is not applicable since 3010(d) applies only to materials prepared for the pending litigation in which the privilege is claimed. Plaintiffs argue that here HCC's withheld documents were prepared in connection with the Paine Parties' claim for coverage and not in anticipation of the pending litigation. Moreover, Plaintiffs contend that HCC's communications with the Paine Parties regarding coverage of the Paine Parties' expenses, settlement negotiations and settlements in the underlying Fox-Paine Litigation were not made solely in anticipation of the present action, and are not shielded from discovery as material prepared in anticipation of litigation under CPLR 3101(d).
E. FPC's Claim of Bad Faith Bars HCC's Assertion of Privilege
Plaintiffs contend that the defense of privilege is not available in the context of bad faith litigation. Plaintiffs, therefore, contend that they are entitled to discovery of HCC's internal communications and communications between HCC and the Paine Parties and their attorneys relating to HCC's coverage position with respect to the Paine Parties' claims as the evidence is relevant to Plaintiffs' bad-faith action against HCC. 
HCC'S OPPOSITION TO THE MOTION
A. Motion Seeks Production of Additional Documents Than Agreed Upon
HCC opposes the motion on the ground that the motion seeks production [*13]of a much larger range of documents than the limited documents to which the parties agreed at the November 19, 2015 pre-motion conference. HCC asserts that, in addition to the limited documents agreed upon by the parties, Plaintiffs now seek to compel: (1) all drafts and communications regarding the Interim Defense Funding Agreement between Paine Parties and HCC; (2) all communications with the Excess Insurers relating to the claims under "the policy," HCC's initial denial of coverage and its subsequent change in coverage position with respect to the Paine Parties; (3) all communications between HCC and its counsel with the Paine Parties, ERP and their respective counsel relating to HCC's denial of coverage, subsequent change in coverage position, and the reimbursement of the Paine Parties' legal costs and funding of the settlement in the Fox-Paine Litigation; and (4) all internal HCC communications relating to the claims under the "[FCP] Policy", the denial of coverage, the subsequent change in coverage position, and the reimbursement of the Paine Parties' legal costs and funding the settlement in the Fox-Paine Litigation (Defendant HCC's Response to Order to Show Cause and Opposition to Motion to Compel, dated Jan. 22, 2016 ["HCC's Response"], at 1-2). 
B. Documents Sought to be Produced are Protected by a Privilege
HCC contends that it is not asserting an attorney-client relationship with the Paine Parties. Therefore, HCC asserts that Plaintiffs discussion of the applicability of the attorney-client privilege in the absence of a "duty to indemnify" is irrelevant. HCC argues that it cannot be disputed that the communications between the Paine Parties and their defense counsel regarding litigation strategy is protected by attorney-client privilege. HCC also contends that the common-interest privilege belongs to the Paine Parties and they have not waived the privilege. 
Additionally, HCC contends that the common-interest privilege applies even where the insurer and insured have some diverging interests and the diverging interests only limit the scope of the protection. Accordingly, HCC contends that it had a common interest in the defense of the underlying litigation, but not with respect to the coverage issue. HCC recognizes that some case law suggests that the common-interest privilege requires an "identical" legal interest, but asserts that recent case law has held that the parties need not have a " total identity of interest as long as a limited common purpose necessitates disclosure to certain parties'" (HCC's Response at 5, quoting Fresh Del Monte Produce, Inc. v Del Monte Foods, Inc., 2015 WL 3450045 at *3 [SD NY 2015], quoting Egiazaryan v Zalmayev, 290 FRD 421, 434 [SD NY 2013]). 
HCC also contends that New York courts are divided as to whether the common- interest privilege requires pending or reasonably anticipated litigation involving the third party claiming the privilege. HCC argues that the more persuasive view, as expressed by the First Department, is that it does not. HCC also argues that the fact that HCC was paying the Paine Parties' defense costs rather than controlling their defense does not compel a different result. HCC contends that the older cases cited by Plaintiffs have not been followed. 
C. Redaction of the Demanded Documents
HCC further asserts that it redacted and produced any documents that could be redacted, such as the claims log. HCC, however, asserts that in certain documents the privileged information is so intertwined with the non-privileged information, redaction would be ineffective. HCC contends that the courts have recognized that under such circumstances, redaction is impractical and will not require it. HCC maintains that both the June 26, 2012 letter and related correspondence demanded by Plaintiffs, as well as the Interim Defense Funding Agreement, contain privileged information which is so inextricably intertwined with non-privileged information that redaction is impractical. In the event, after an in camera review, the Court disagrees, HCC asserts that it will endeavor to redact each document consistent with the Court's instructions. 
As to HCC's claims log, HCC contends that its redactions are proper. HCC asserts that it redacted all privileged information regarding the underlying litigation obtained from the Paine Parties' counsel which is protected by the common-interest privilege, and entries containing communications from outside coverage counsel which are protected by the attorney-client privilege. HCC contends that it also redacted irrelevant entries such as the setting and adjustment of reserves for the underlying litigation. 
As to documents withheld by HCC other than those limited documents agreed upon by the parties, including communications with the Paine Parties or Excess Insurers, HCC contends that those documents contain either entirely privileged information or the privileged information is inextricably intertwined with the non-privileged information. HCC asserts that, at the Court's direction, it will review such documents for potential redactions. 
D. Files of Aidan McCormack, Former Coverage Counsel for HCC
HCC also contends that Plaintiffs' demand that it search the files of Aidan McCormack of DLA Piper, formerly outside coverage counsel and current counsel for HCC in this action, is unjustified. HCC contends that most of Mr. McCormack's files consist of communications with HCC, which are protected by the attorney-client privilege; and contain information from the Paine Parties' counsel about the Fox-Paine Litigation, which is protected by the common interest privilege. HCC also contends that even if non-privileged coverage communications are contained in Mr. McCormack's file, "there is nothing in the record to suggest that the same correspondence was not also contained in the files that Houston Casualty searched" (id. at 3). HCC further contends that to the extent that Plaintiffs seek information relayed to the Paine Parties' coverage counsel, such information should be in the HCC files already searched. Accordingly, HCC appears to contend that Plaintiffs' demand with respect to Mr. McCormack's files is overly broad and an improper fishing expedition. 
HCC further asserts that the communications with its outside counsel to obtain legal advice or services are privileged as attorney-client communications as long as they are predominately of a legal character, even if they contain some nonlegal concerns. HCC contends that this is true even if the communication is made before the insurer decides to deny coverage. HCC contends that where, as here, outside counsel [*14]is communicating legal advice regarding the extent to which the claim was covered by the relevant insurance policy, advice as to correspondence to be sent to the insured, or legal opinions regarding potential claims, the communications fall within the scope of the attorney-client privilege.
E. Plaintiffs' Bad Faith Claim Does Not Bar the Assertion of Privilege
HCC challenges Plaintiffs' contention that a bad faith claim bars the assertion of a privilege and contends that no such rule exists. HCC asserts that Plaintiffs erroneously rely upon cases wherein the insurer retained counsel to defend the insured and the alleged bad faith was based upon the failure to defend the insured. Here, HCC contends that the defense of the Fox-Paine Litigation is completely irrelevant and, in any event, protected by the common-interest privilege.
LEGAL DISCUSSION
A. HCC's Contention that the Motion Should be Limited is Without Merit
The Court shares HCC's expectation that this motion was to focus on the documents that had been submitted for in camera review. This is because the Court was prepared to rule on January 8, 2016 as to whether those documents should be produced but gave the parties the option of having a determination made on the basis of a formal, appealable record. Nevertheless, the Court cannot conclude that Plaintiffs waived, or agreed to forego, their demands for further documents. Since Defendants had a full and fair opportunity to address the broader issues raised by Plaintiffs in their opposition to this motion, there is no prejudice to entertaining those broader issues and doing so is in the interests of judicial economy, since the issues would doubtless be raised in a further round of motion practice, which the Court hopes (but does not expect) to avoid. That said, and partly because HCC has not served a more detailed privilege log, this Court is unable to address specific documents other than those previously submitted to this Court for in camera review. However, the discussion of the issues provided herein will hopefully provide guidance as to the claimed privileges as to the additional categories of documents which Plaintiffs seek to compel HCC to produce.
B. Statements Made During the Pre-Motion Conference
This Court also finds that the parties' reliance upon statements made by this Court at the pre-motion conference held on November 19, 2015 to be misplaced. The purpose of the conference was to discuss and possibly resolve the issues underlying Plaintiffs' request to make a motion to compel HCC to produce the documents which it withheld as privileged. While the Court may have expressed views as to the possible courses of action, those views were predicated upon the Court's then understanding of the relevant facts and law. Such views are always tentative and subject to reconsideration upon deliberation upon the submissions of the parties.
Having reviewed the arguments and evidence submitted to this Court on the present motion, this Court will address the issues raised by the parties regarding the claimed privileges, as well as the specific documents submitted for in camera review.
C. Plaintiffs' Contention that Bad Faith Litigation Bars Privilege

The Court cannot agree with Plaintiff's claim that HCC is barred from asserting any privilege as to the demanded documents due to bad faith. The cases relied upon by Plaintiffs hold that in actions wherein the insured alleges that the insured failed to provide a defense, or failed to settle the underlying action in bad faith, the insurer cannot shield discovery which would otherwise be protected as an attorney-client communication or attorney work product. The cases relied upon by Plaintiffs, however, are factually distinguishable from the circumstances of the present action. 
In Colbert v Home Ind. Co. (45 Misc 2d 1093 [Sup Ct, Monroe County 1965], affd 24 AD2d 1080 [4th Dept 1965]), the court held that where an insured sued its insurer for failing to settle claims within the policy limits in a motor vehicle action, plaintiff was entitled to discovery regarding the communications between the insurer and counsel retained by the insurer to defend two separate actions, one against plaintiff-driver and the other against the owner of the motor vehicle involved, its insured. The court in the Colbert court did not specifically address the inapplicability of any privileges. 
The Court in Groben v Travelers Indem. Co. (49 Misc 2d 14 [Sup Ct, Oneida County 1965], affd 28 AD2d 650 [4th Dept 1967]), cited Colbert in dicta for its assertion that the privilege of attorney work product was "legally insufficient" where the insured also alleged that the insurer acted in bad faith by failing to settle claims within the policy limits.
Similarly, in Zurich Ins. Co. v State Farm Mut. Auto. Ins. Co. (137 AD2d 401 [1st Dept 1988]), the Court held that where the primary insurer was alleged to have breached its fiduciary duty to an excess insurer based upon its alleged bad faith refusal to settle the underlying claim against the insured, the primary insurer could not assert the privileges of litigation and work product privilege to protect materials from discovery.
In Woodson v American Transit Ins. Co. (280 AD2d 328 [1st Dept 2001]), the insured alleged that the insurer acted in bad faith when it denied the insured a defense in a personal injury action. Therein, the Court held that the insurer could not assert claims of attorney-client privilege with respect to materials regarding retained counsel's handling of the claim since the attorney-client privilege belonged to the insured. Thereafter, the Court stated, as a notation, that generally that where it is alleged that an insurer breached a fiduciary duty to the insured, the insurer may not use the attorney-client or work product privileges to shield disclosure of material relevant to the insurer's handling of the claim. Plaintiffs argue that, therefore, in all cases involving bad faith claims by an insured against an insurer the insurer is barred from using a privilege to withhold discovery. This Court cannot agree with Plaintiffs' broad interpretation. The comment in Woodson was dicta in that the primary rationale for the decision was that the privilege belonged to the insured who waived it. Moreover, the [*15]dicta must be read in the context in which it was stated, i.e., an action by an insured against an insurer for bad faith refusal to provide a defense to a personal injury action. Indeed, in Woodson the insurer necessarily had a duty to defend, while here HCC had no duty to defend and only had an obligation to indemnify any insured for, inter alia, its defense costs.
The remaining case cited by Plaintiffs does not stand for the proposition that where an insured alleges bad faith against its insurer, the insurer cannot assert any privileges in order to withhold discovery (National Union Fire Ins. Co. of Pittsburgh, P.A. v H & R Block, Inc., 2014 WL 4377845 [SD NY, Sept. 4, 2014, No. 12 Civ 1505(AT)(HBP)]). In National Union, the insured sought discovery of its insurer's reserves. The Court in National Union held that neither the attorney-client privilege nor the work product doctrine applied because there was no evidence that counsel was involved in establishing the reserves.
In the present action, unlike the cases relied upon by Plaintiffs, Plaintiffs are not alleging that HCC, in bad faith, failed to provide it a defense in the underlying litigations or refused to negotiate or settle their underlying claims. Rather, Plaintiffs allege, inter alia, that HCC breached its implied covenant of good faith and fair dealing by: (1) providing coverage to the Paine Parties, who they allege are not insureds under the FPC Policy; (2) disbursing the entire limit of the FPC Policy to the Paine Parties; and (3) failing to advise Plaintiffs of the Paine Parties' claims against the FPC Policy. Accordingly, the cases relied upon by the Plaintiffs do not support their contention that HCC is barred from asserting any privilege with respect to the demanded materials.
D. Legal Standards for Attorney-Client, Common-Interest and Attorney Work Product Privileges
The burden of establishing that certain documents are privileged and protected from discovery is on the party asserting the privilege, and the protection claimed must be narrowly construed (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371 [1991]; 148 Magnolia, LLC v Merrimack Mut. Fire Ins. Co., 62 AD3d 486, 487 [1st Dept 2009]). The burden cannot be satisfied by counsel's conclusory assertions of privilege and competent evidence establishing the privilege must be set forth by the party asserting the privilege (Claverack Coop. Ins. Co. v Nielson, 296 AD2d 789 [2002]; Agovino v Taco Bell 5083, 225 AD2d 569, 571 [2d Dept 1996]; Martino v Kalbacher, 225 AD2d 862 [3d Dept 1996]; Smith v Ford Found., 231 AD2d 456 [1st Dept 1996]). Whether a particular document is protected by a privilege is necessarily a fact-specific determination, usually requiring an in camera review (Spectrum Sys. Intl. Corp., 78 NY2d at 378; see Rossi v Blue Cross & Blue Shield of Greater NY, 73 NY2d 588, 592-593 [1989]). 
The attorney work product privilege (CPLR 3101[c]) applies only to documents prepared by counsel, as an attorney, which reflect counsel's learning and professional skills, including legal research, analysis, conclusions, legal theory and strategy (Brooklyn Union Gas Co. v American Home Assur. Co., 23 AD2d 190, 190-191 [1st Dept 2005]). The attorney work product privilege, however, may be waived by a [*16]party where the party "failed to exercise due diligence and reasonable care to protect the confidentiality of these documents" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 162 AD2d 577, 578 [2d Dept 1990]; Bras v Atlas Constr. Corp., 153 AD2d 914 [2d Dept 1989]).
For a document to be privileged as an attorney-client communication pursuant to CPLR 4503(a), the document must be primarily or predominantly a communication of a legal character, for the purpose of obtaining or rendering legal advice or services, and intended to be confidential (Spectrum, 78 NY2d at 379; Rossi, 73 NY2d at 594; People v Osorio, 75 NY2d 80, 84 [1989]). "[T]he privilege is not lost merely by reason of the fact that it also refers to certain nonlegal matters" (Rossi, 73 NY2d at 594; All Waste Sys. v Gulf Ins. Co., 295 AD2d 379 [2d Dept 2002]). To qualify as a privileged attorney-client communication, the communication must concern legal rights and obligations and evidence counsel's professional skills such as counsel's judgment and recommended legal strategies (Rossi, 73 NY2d at 594). However, "[n]o attorney-client privilege arises unless an attorney-client relationship has been established" (Sieger v Zak, 60 AD3d 661, 662 [2d Dept 2009]; see Matter of Priest v Hennessy, 51 NY2d 62, 68-69 [1980]). 
Although the attorney-client privilege also applies to communications with corporate staff counsel, staff counsel "may serve the company with mixed business-legal responsibility ... [which] may blur the line between legal and nonlegal communications," complicating the application of the attorney-client privilege (Rossi, 73 NY2d at 592). The attorney-client privilege only applies to communications with staff counsel that is legal in nature and not a business communication which is part of counsel's "ongoing, permanent relationship with the organization" (id. at 592-593). "In that the privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose, the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure" (id. at 593). 
A party waives a privilege which would otherwise attach to an attorney-client communication if that specific communication was voluntarily shared with a third-party (see People v Osorio, 75 NY2d at 84; People v Harris, 57 NY2d 335, 343 [1982]; Sieger, 60 AD3d at 662). The fundamental questions in assessing whether the attorney-client privilege is waived are whether the client intended to retain the confidentiality of the privileged materials and whether the client took reasonable steps to prevent disclosure" (Kraus v Brandstetter, 185 AD2d 300, 301 [2d Dept 1992] [reasonable expectation the information in the report of the hospital's law committee would remain confidential due to the common interest of each recipient in the hospital's investigation, where all recipients were management employees of the hospital]).
An exception to the waiver exists for attorney-client communications made between parties sharing a common legal interest with their common counsel or with each party's respective counsel for the purpose of furthering their shared legal interest (Wallace v Wallace, 216 NY 28 [1915]; Ambac Assur. Corp. v Countrywide Home Loans, Inc., 124 AD3d 129, 130 [1st Dept 2014]). To fall within the common-interest privilege, also known as the joint defense privilege (originating in criminal law), "the [*17]privileged communication must be for the purpose of furthering a legal interest in common to the client and the third party," and "[t]he legal interest that those parties have in common must be identical (or nearly identical), as opposed to merely similar" (Hyatt v State Franchise Tax Bd., 105 AD3d 186, 205 [2d Dept 2013]; see Cohen v Cohen, 2015 WL 745712, at *3 [SD NY Jan. 30, 2015, No. 09 Civ 10230(LAP)]). Additionally, since the common-interest privilege is an exception to the rule that the presence of a third-party at a communication between counsel and client waives the attorney-client privilege, the communication must have been "made for the purpose of facilitating the rendition of legal advice or services ... and must have been predominantly of a legal rather than a commercial nature" (U.S. Bank N.A. v APP Intl. Fin. Co., 33 AD3d 430,431 [1st Dept 2006]; see Hyatt, 105 AD3d at 205). The common-interest privilege "does not protect business or personal communications" and only applies "to communications ... with respect to legal advice in pending or reasonably anticipated litigation in which the joint consulting parties have a common legal interest" (The Omni Health & Fitness Complex of Pelham, Inc. v P/A Acadia Pelham Manor, LLC, 33 Misc 3d 1211[A], at *2 [Sup Ct, Westchester County 2011]; Cohen, 2015 WL 745712, at *3; see Hyatt, 105 AD3d at 205; Cohen, 2015 WL 745712, at *3). 
The Appellate Division, Second Department has continued to hold that the application of the common-interest privilege requires that the communication be made "in reasonable anticipation of litigation" in which the parties have a common legal interest (Hyatt, 105 AD3d at 205; Hudson Val. Mar., Inc. v Town of Cortlandt, 30 AD3d 377, 378 [2d Dept 2006]; contra Ambac Assur. Corp. v Countrywide Home Loans, Inc., 124 AD3d at 130). Notably, in Hyatt (105 AD3d 186), the Second Department specifically rejected petitioner's request to extend common-interest privilege to cover communications made with no expectation of litigation. In Hyatt, the petitioner was an inventor and holder of numerous patents and argued that his communications with staff counsel for the corporation to whom he licensed certain patents were privileged.
This Court notes that the First Department in Ambac Assur. Corp. v Countrywide Home Loans, Inc. (124 AD3d 129), upon which HCC relies, held that a common-interest privilege could arise absent pending or reasonably anticipated litigation. In so holding, the First Department acknowledged the line of New York cases, including Hyatt and Hudson Val. Mar., both issued by the Second Department, wherein the courts have held that pending or reasonably anticipated litigation is required for the common-interest privilege to apply. The First Department, however, noting that the Court of Appeals has yet to consider the litigation requirement for the common-interest privilege, elected to adopt the federal approach which does not require pending or reasonably anticipated litigation (Ambac, 124 AD3d at 135; citing In re Teleglobe Communications Corp., 493 F3d 345, 364 [3d Cir 2007]; see United States v BDO Seidman, LLP, 492 F3d 806 [7th Cir 2007], cert denied 552 US 1242 [2008]; In re Regents of Univ. of Cal., 101 F3d 1386 [Fed Cir 1996], cert denied sub nom Genetech Inc. v Regents of Univ. of Cal., 520 US 1193 [1997]).
This Court must follow the precedents of the Second Department in the event of a conflict between rulings of the various Appellate Divisions, and absent a determination from the Court of Appeals. It is not for this Court to say that the First [*18]Department's holding that the common-interest privilege does not require an expectation of litigation is "more persuasive". 
Moreover, this Court finds instructive Cohen (2015 WL 745712), which was decided in 2015, post-Ambac. Therein, the District Court for the Southern District of New York, applying New York State law, determined that a common-interest privilege did not apply to communications between Plaintiff and a litigation funder. The Cohen Court held that the common-interest privilege " does not protect business or personal communications' but rather applies where "joint consulting parties' to a litigation have a common legal interest'" (Cohen, 2015 WL 745712, at *3 ; citing The Omni Health & Fitness Complex of Pelham, Inc. v P/A Acadia Pelham Manor, LLC, 33 Misc 3d 1211[A], at *2). The Cohen Court held that "[a]lthough the two may have a common financial interest in the outcome of this litigation, that relationship does not fall into the narrow category primarily reserved for co-litigants pursuing a shared legal strategy" (id.; citing Omni Health, 33 Misc 3d 1211[A]). The litigation funder in Cohen was a non-practicing attorney hired by Plaintiff's counsel to provide "litigation support" and also funded the litigation. The Cohen Court determined that the relationship between Plaintiff and the litigation funder was "inherently financial" (Cohen at *4). The Cohen Court's determination was based upon its finding that since the litigation funder was not a party to the litigation and there was no suggestion that she had a legal claim against Defendant, she could not "possibly share any legal interest with Plaintiff sufficient to invoke the common interest doctrine" (Cohen at *4). The Cohen Court also held that the "Joint Interest" agreement between Plaintiff and the litigation funder could not create a privilege that does not otherwise exist (id.).
E. Communications Among Defense Counsel for the Paine Parties and HCC and the Excess Insurers and Their Respective Counsel
HCC has affirmatively asserted in opposition to the present motion that it is not claiming that the attorney-client privilege applies to the communications among defense counsel for the Paine Parties and HCC and the Excess Insurers and their respective counsel. Therefore, the Court need not reach the issues raised by Plaintiffs with respect to their contention that the attorney-client privilege does not protect the communications between the Paine Parties and HCC, including their contention with respect to HCC's reservation of rights.
As to the common-interest privilege, this Court does not agree with HCC that the common-interest privilege applies to the foregoing communications, including the documents submitted for in camera review, which include: (1) the letter dated June 26, 2012 from Stephen Wagner, the Paine Parties' defense counsel in the Fox-Paine litigations, to HCC and the Excess Insurers and their counsel ("Wagner Letter"); and (2) the subsequent emails between counsel for the Paine Parties, HCC and the Excess Insurers. 
Applying the law as it exists in the Second Department with respect to the common-interest privilege, HCC was required to establish that the communications between the Paine Parties' defense counsel, HCC and its counsel, and the Excess Insurers and their counsel were not only attorney-client communications made to further a common identical or nearly [*19]identical legal interest, but were also made in anticipation of litigation in which the communicating parties had a common legal interest (Stenovich v Wachtell, Lipton, Rosen & Katz, 195 Misc 2d 99, 108 [Sup Ct NY County 2003], cited in Hudson Valley Marine, Inc. v Town of Cortlandt, 30 AD3d 377 [2d Dept 2006]).
HCC has not met this burden. 
The Wagner Letter demanded that the insurers tender their policy limits so that the Paine Parties could engage in settlement discussions with the Plaintiffs in the Fox-Paine Litigation. Although the first paragraph of the letter provides an update on the settlement negotiations in the Fox-Paine Litigation and the second paragraph includes the amount for which outside counsel for the Paine Parties believes the underlying litigations would settle, the letter is foremost a demand letter for coverage. Notably, the Wagner Letter includes a recitation of case law requiring an insurer to accept reasonable settlement demands and stating that a dispute over coverage is not a defense to liability for a bad faith refusal of the insurer to settle. Accordingly, it cannot be held that the Wagner Letter was made in the furtherance of a common legal interest held by the insurers and the Paine Parties. Moreover, although the content and tone of the letter suggests future litigation, it is future litigation in which insurers and the Paine Parties would be adverse parties, not future litigation in which they would share a common legal interest. Moreover, the brief status update by Mr. Wagner regarding the settlement negotiations does not contain any information about the defense strategy in the underlying litigation, and is relevant regarding the context in which the letter was sent and received. Accordingly, HCC shall produce the Wagner Letter to Plaintiffs.
The subsequent emails among Mr. Wagner, counsel for HCC and the Excess Insurers following the June 26, 2012 letter, which were also submitted for in camera review, also do not fall within the common-interest privilege insofar as HCC has failed to establish that the emails were sent in anticipation of litigation in which the parties to the communications would have a shared legal interest, a requirement for the privilege still required under the case law in the Second Department. Additionally, the subsequent emails are relevant to the coverage issue, including the coverage to be provided amongst the insurers. Moreover, the subsequent emails, for the most part, deal with the logistics of the insurers' response to the Wagner letter and future discussions. Two of Wagner's subsequent emails provided the insurers with a status update with respect to the settlement demand from Fox and stressed the time sensitivity of a response to the settlement demands, but did not provide any legal analysis or defense strategies.
Absent a sufficient showing as to the litigation requirement, this Court need not reach the issue of whether the subsequent emails were sent in furtherance of a common legal interest, and whether the shared interest of the Paine Parties, HCC and the Excess Insurers in minimizing the Paine Parties' defense costs and settlement in the underlying litigation qualify as a legal interest for the purpose of a common-interest privilege.
This Court, however, notes that HCC further failed to offer sufficient support for its proposition that an insurer and insured share the requisite common interest in the context of an indemnity-only policy, as opposed to a liability policy which imposes a duty to defend upon the insurer. Additionally, at least one court has held that letters of defense counsel written for the purpose of apprising the insurer of the status of the case, not for the purpose of seeking or imparting legal advice, are not protected from disclosure by the attorney-client privilege (In re [*20]Imperial Corp. of America v Alshuler, 167 FRD 447, 452-453 [SD Cal 1995], affd 92 F3d 1503 [9th Cir 1996]). Moreover, in Continental Cas. Co. v St. Paul Surplus Lines Ins. Co. (265 FRD 510 [ED Cal 2010]) the District Court, applying California law (Cal Civ Code § 2860[f]), which codified the requirement that an insurer provide independent counsel (Cumis counsel) to an insured where there is a dispute as to coverage and an insurer defends under a reservation of rights, recognized that the tripartite relationship among insurers, insureds and defense counsel, upon which their communications are deemed privileged, does not exist where the insurer reserves its rights to deny coverage. Additionally, the District Court in Lectrolarm Custom Sys., Inc. v Pelco Sales, Inc. (212 FRD 567 [ED Cal 2002]) held that where an insurer is providing a defense to an insured under a reservation of rights, a common-interest privilege applies only to communications which "are part of an ongoing and joint effort to set up a common defense strategy" (id. at 572). 
This Court also finds that the facts in the present action are similar to the recent case of Cohen (2015 WL 745712), previously discussed by this Court, wherein the District Court, applying New York law, held that the common-interest privilege was inapplicable. In Cohen, the District Court held that no common-interest privilege applied to the communications between Plaintiff and the "litigation funder" since although they may have "a common financial interest in the outcome of this litigation, that relationship does not fall into the narrow category primarily reserved for co-litigants pursuing a shared legal strategy" (id. at *4).
Moreover, the affirmation of Jaren Janghorbani, Esq., counsel for the Paine Parties, which was submitted in opposition to this motion, does not change this Court's analysis of the application of the common-interest privilege to the foregoing communications. In the affirmation, the Paine Parties' counsel asserts that the Paine Parties intended the documents and information regarding the Fox-Paine Litigations provided to HCC to remain confidential to the extent the documents and information was subject to the attorney-client privilege, and expected the common-interest privilege would apply to the protected documents and information. This Court, however, is not bound to accept the label placed on documents by counsel (Aetna Cas. and Sur. Co. v Certain Underwriters at Llyod's London, 176 Misc 2d 605 [Sup Ct, NY County 1998]). And what the parties (or their counsel) intended or expected is not the governing standard here.
Accordingly, Plaintiffs' motion is granted to the extent that HCC shall produce the following to Plaintiffs: (1) the letter of Stephen Wagner dated June 26, 2012, which was submitted for in camera review; and (2) the subsequent emails among Mr. Wagner, HCC and the Excess Insurers and their respective counsel, which were submitted for in camera review.
F. Communications Among HCC and Its Counsel, Defense Counsel for the Paine Parties, and ERP and Its Counsel
To the extent that Plaintiffs seek to compel HCC to produce all communications among HCC and its counsel, on the one hand, and the Paine Parties' counsel and ERP and its counsel (together), on the other hand, relating to HCC's denial of coverage, the subsequent change in HCC's position on coverage, and the reimbursement of the Paine Parties' legal costs and funding of the settlement in the Fox-Paine Litigation, HCC has failed to demonstrate the [*21]requirements for a common-interest privilege with respect to those communications. As previously held, HCC has failed to demonstrate that communications as to coverage were made in a pending or anticipated litigation in which the Paine Parties and HCC shared a common legal interest, as opposed to a financial interest. In any event, there is clearly a conflict of interest among the Paine Parties and HCC with respect to the coverage to be provided to the Paine Parties, which defeats HCC's contention that a common-interest privilege applies to the foregoing communications. 
Accordingly, HCC shall produce all communications between HCC and its counsel, on the one hand, and the Paine Parties' counsel and ERP and its counsel, on the other hand, relating to HCC's denial of coverage, the subsequent change in HCC's position on coverage, and the reimbursement of the Paine Parties' legal costs and funding of the settlement in the Fox-Paine Litigation with any references to the defense strategy in the Fox-Paine Litigation, if any, redacted. To the extent that the foregoing communications are redacted, HCC shall serve a detailed privilege log as to the redacted communications.
G. The Interim Defense Funding Agreement is Not Subject to a Privilege
The Interim Defense Funding Agreement ("Agreement") between HCC and the Paine Parties, which was also submitted for in camera review, also does not qualify for protection from disclosure under the common-interest privilege for the reasons already set forth. As argued by Plaintiffs, the Agreement is clearly a transactional document regarding coverage to the Paine Parties under the FPC Policy. As to the coverage issue, there is no dispute that HCC and the Paine Parties are adverse. Notably, the Agreement states that they have differing positions regarding coverage. HCC and the Paine Parties, therefore, do not share any common legal interest regarding the coverage issue. This Court's review of the Agreement does not reveal any defense strategies regarding the Fox-Paine Litigation. Accordingly, HCC shall produce the Interim Defense Funding Agreement.
HCC failed to discuss or offer any case law in support of its contention that the drafts and prior iterations of the Interim Defense Funding Agreement, which Plaintiffs' also seek, are subject to a privilege. This Court, however, is cognizant that, under New York law, drafts in an attorney's file may be privileged attorney-client communications and not discoverable where there has been no disclosure of the draft's contents to third persons (Stenovich v Wachtell, Lipton, Rosen & Katz, 195 Misc 2d 99 [Sup Ct, NY County 2003]; AIU Ins. Co. v TIG Ins. Co., 2008 WL 4067437 [SD NY, Aug. 28, 2008, No.07 Civ 7052(SHS)(HBP)], mod on reconsid on other grounds 2009 WL 1953039 [SD NY Jul. 8, 2009, No. 07 Civ 7052[SHS][HBP]). Here, although it is arguable that drafts of agreements prepared by HCC's counsel and in HCC's files would be protected as an attorney-client communication, HCC failed to demonstrate who prepared any existing drafts in its possession (HCC's counsel or counsel for the Paine Parties), or that any drafts prepared by HCC's counsel were not shared with third-parties who did not have a common legal interest. Absent proof as to the foregoing, HCC failed to meet its burden of demonstrating that a privilege attached to the drafts in its possession. 
In view of the foregoing, Plaintiffs' motion to compel is granted to the extent that HCC shall produce the Interim Defense Funding Agreement and any drafts of the Agreement in [*22]its possession.
H. HCC's Claims Log
Plaintiffs' essentially contend that the Claims Log was prepared in the ordinary course of business and its form would be the same regardless of any potential litigation with the Paine Parties. Accordingly, Plaintiffs contend that the entries in the Claims Log, even if prepared by attorneys, are discoverable.
HCC contends that it properly redacted entries which (1) contained privileged information from the Paine Parties' counsel pursuant to the common-interest privilege, (2) contained communications with outside coverage counsel pursuant to the attorney-client privilege, and (3) irrelevant information, including setting and adjustment of reserves for the underlying litigation. HCC, however, does not specifically address the majority of the entries which were made by Susan Leddy, Esq., Senior Claims Attorney at HCCG-DFG, the Claims Administrator for the FPC Policy at issue (Aff. of Susan Leddy in Support of Response to Order to Show Cause and Opposition to Motion to Compel, dated January 22, 2016, at ¶¶ 1-3). It appears that among the reasons offered by HCC for its redaction of the its Claims Log entries, only the alleged common-interest privilege is applicable to the entries since there is no evidence that Ms. Leddy acted as outside coverage counsel and the entries do not contain irrelevant information as asserted by HCC. 
As previously determined herein, the common-interest privilege does not protect information provided by the Paine Parties to HCC or its agents, including HCCG-DFG. Therefore, the entries into the Claims Log by Susan Leddy reporting information obtained by the Paine Parties would not be protected from disclosure. Moreover, insofar as a claims log is kept in the ordinary course of an insurer's business, HCC has the burden of establishing that certain entries were of a legal, rather than commercial nature in order to establish that the entries were subject to an attorney-client privilege (Spectrum Sys., 78 NY2d at 379). Notably, in her affirmation, Susan Leddy states that her responsibilities include maintaining HCC's claims files for request for coverage under the FPC Policy and the associated underlying litigations (id. at ¶ 3). However, to the extent that the entries contain attorney-client communications from outside coverage counsel, an attorney-client privilege may apply if they were primarily and predominantly of a legal nature. 
This Court has conducted an in camera review of HCC's Claims Log that reveals that HCC redacted portions of the Claims Log that are neither privileged nor irrelevant. This Court's specific findings as to the Claims Log are set forth below.
(1) The 9/19/2012 entry of Susan Leddy, Senior Claims Counsel for HCCG-DFG, titled "SUMMARY OF 9/14/12 CARRIER MEETING," which includes email from Aidan McCormack, HCC's outside coverage counsel 
The entry initially contains a statement that "Aidan and Leslie of DLA Piper" attended the carrier/settlement meeting on HCC's behalf and the "email below to us summarizes what occurred." The entry then sets forth an email of Aidan McCormack, outside coverage counsel for HCC to "Rich and Susan" which summarizes the meeting. This entry is of a primarily commercial/business nature. However, to the extent it contains any attorney-client communications, that portion of the entry is entitled to protection insofar as there [*23]is no evidence that the Claims Log was shared with third-parties.
The initial statement in the entry by Susan Leddy does not fall under any privilege. It contains no legal analysis and the fact that it was in the Claims Log, which is kept in the ordinary course of any insurer's business, establishes that it was predominately for commercial, as opposed to legal, purposes. Therefore, the initial statement in the entry is not subject to the attorney-client privilege. This Court also notes that the statement is not attorney work product as it was not material uniquely the product of counsel's learning and professional skills (Brooklyn Union Gas Co. v American Home Assur. Co., 23 AD3d 190 [1st Dept 2005]).
With regard to Aidan McCormack's email,[FN3]
 it is argued that the content of the email is subject to the attorney-client privilege. For the most part, the Court does not agree.
Just because counsel is engaged as coverage counsel, it does not mean that counsel may not provide legal advice to his or her client, which would be subject to attorney-client privilege (see generally Reliance Ins. Co. v American Lintex Corp. 2001 WL 604080 [SD NY 2001]). Moreover, the inclusion of the email into the Claims Log does not waive any privilege which may attach to the email itself. Notably, claims logs are created in the insurance industry for internal use only, and the record does not contain any evidence that HCC's Claims Log was shared with any third-parties which would effect a waiver of the privilege. 
However, the bulk of the email consists of a listing of the date, location and participants present at a settlement meeting and a summary description of what was said at the meeting. Since the meeting itself involved non-clients (indeed, it involved representatives of disputing parties), no privilege can attach to the meeting contents (other than the common interest privilege, which does not apply for the reasons stated above).
However, it is arguable that an attorney's notes or minutes of a meeting could be protected under the work product doctrine (CPLR 3101[c],[d][2]). However, the email does not, for the most part, contain a recounting of a witness interview or Mr. McCormack's mental impressions, personal beliefs, case evaluation or trial strategy (see Aetna Cas. and Sur. Co. v Certain Underwriters at Llyod's London, 176 Misc 2d 605, 614-615 [Sup Ct, NY County 1998]). Moreover, although it is arguable that a few sentences in the email contain Mr. McCormack's impressions, HCC failed to assert that the email was attorney work product and protected from discovery, despite the fact that Plaintiffs addressed the doctrine of work product with respect to the Claims Log. Accordingly, HCC has waived any argument that the email was Mr. McCormack's work product and privileged from discovery on that basis. 
Accordingly, HCC shall produce a copy of the Claims Log entry dated September 19, 2012 inclusive of the incorporated email of Aidan McCormack, Esq.
(2) Remaining entries in the Claims Log of Susan Leddy.
The remaining entries in the Claims Log of Susan Leddy were also primarily of a commercial/business nature. However, to the extent that they contain [*24]attorney-client communications from HCC's outside counsel, those portions of the entries are entitled to protection. Additionally, since HCC's limit reserve is not relevant to the issues in this action, any references to the limit reserve may be redacted as irrelevant (compare Groben, 49 Misc 2d 14).
The August 15, 2012 entry, titled "SETTLEMENT OF UNDERLYING ACTION", states that the "Matter" has finally settled and sets forth the details of the settlement, and is clearly for business purposes only as it contains no legal advice or opinions. HCC shall produce an unredacted copy of this entry.
The August 6, 2012 entry, titled "SETTLEMENT DEMAND/ TENDERING OF POLICY LIMITS", reports that a settlement agreement was reached, the reasons for the tender of the policy limits, and stating that it is not clear the excess carriers will agree to the settlement. In view of the content and context of the entry, which is merely a report of the settlement and the facts leading up to the settlement, it cannot be said that the entry is predominantly of a legal nature. Accordingly, it is not subject to the attorney-client privilege and HCC shall produce an unredacted copy of the entry. 
The May 16, 2012 entry, titled "UPCOMING SETTLEMENT MEETING", reports on the confirmation of a settlement meeting. Hence, the first three sentences are not to be redacted. However, the last three sentences discusses information sought from DLA Piper, DLA's legal advice, and the plan for a future conversation with DLA Piper regarding settlement discussions. These three sentences may be redacted.
The May 8, 2012 entry again reports information about the settlement negotiations of the Fox-Paine Litigations and defense costs incurred to date, which is for a commercial nature. However, the last two paragraphs contain information regarding communications from HCC's outside counsel pertaining to legal advice and that information is inextricably intertwined with any non-legal information set forth in those paragraphs. Hence, HCC shall, therefore, produce this entry with leave to redact the last two paragraphs.
The March 27, 2012 entry titled "STATUS UPDATE" provides an update on the status of the underlying litigations, including the commencement of three additional actions by Fox. This entry is mainly of a commercial/business nature and not subject to the attorney-client privilege. However, the last sentence of the entry contains reference to the setting of the limit reserve. HCC may redact that portion of the last sentence insofar as information regarding the limit reserve set by HCC is irrelevant to the issues in this action. In view of the foregoing, HCC shall produce this entry with only the information regarding the limit reserve redacted. 
The March 22, 2012 entry is again titled "STATUS UPDATE". The entry contains a report on the underlying Delaware litigation as provided, in part, by the Paine Parties' defense counsel. The entry also includes a report that the excess insurers are now showing significant interest in the matter in view of the amount of defense costs paid by HCC. The final paragraph of the entry discusses defense costs paid and the limit reserve. As a whole, the entry is of a commercial nature. Moreover, there is no common-interest between defense counsel in the underlying Delaware litigation which would protect his communications contained in the entry. Those portions of the entry are, therefore, not subject to any privilege. However, since the limit reserve is irrelevant to the issues in this action, HCC shall produce a copy of the entry with only the last [*25]paragraph relating to limit reserve redacted. 
The June 6, 2011 entry titled "UPDATE TO FILE", reports on the Fox-Paine Litigations commenced as of that date, as well as a defense update for the litigation commenced in Delaware. It contains no legal advice or opinions. Accordingly, the entry
is of a solely commercial/business nature and is not subject to any privilege. HCC, therefore, shall produce this entry without redaction.
(3) Entries regarding reserve limit and payment of HCC's counsel fees.
Although information as to HCC's reserve limit and the payment of its counsel fees is not privileged, the information is irrelevant to the issues in this action. Notably, this is not an action where an insured claims that the insurer negligently evaluated the worth of the underlying claims such that the actions on the reserve would be relevant (compare Groben, 49 Misc 2d 14). Accordingly, the redactions as to entries containing this information does not prejudice Plaintiffs, and HCC does not have to provide those entries in unredacted form to Plaintiffs. 
(4) Entries which were not made by Susan Leddy and which do not refer to the limit reserve or the payment of HCC's counsel fees.
Four entries in the privilege log which are unrelated to the limit reserve or HCC's counsel fees and were redacted by HCC were made by employees of HCCG-DFG, other than Susan Leddy, and the positions of those employees have not been identified. Those individuals, however, are not listed as attorneys on HCC's privilege log. An entry was made on December 7, 2010 by Karl Smith regarding setting up a meeting, which was fully redacted. Three entries were made by Tara Smith on June 4, 2008, August 20, 2009 and June 2, 2010, which are unrelated to the reserve limit or HCC's counsel fees and were partially or fully redacted.[FN4]

Since HCC failed to identify the positions of Karl Smith and Tara Smith at HCC, HCC failed to meet its burden of establishing that these entries were made by an attorney and were protected by the attorney-client privilege. HCC further failed to demonstrate that those entries were otherwise privileged from disclosure or irrelevant to the issues in this action. Accordingly, HCC shall produce those unredacted entries. 
I. Internal HCC Communications
Plaintiffs also purport to seek an order compelling HCC to produce all internal HCC communications relating to the claims under the FPC Policy, HCC's denial of coverage, subsequent change in coverage position, and reimbursement of the Paine Parties' legal costs and funding of the settlement in the underlying Fox-Paine Litigation. This Court interprets Plaintiffs' demand to seek only communications between HCC personnel. Plaintiffs assert that they are entitled to the communication as they are (1) not privileged attorney work product, since they would have been prepared in the same form irrespective of any potential litigation with the Paine Parties; and (2) were not [*26]prepared in anticipation of litigation. HCC does not address the internal HCC communications, but argues that the other documents not addressed at the November 19, 2015 conference (or submitted for in camera review) are privileged or that privileged information in the documents is inextricably intertwined with non-privileged information. HCC does not specifically raise the privilege which attaches to material prepared in anticipation of litigation.
Absent an in camera review of the communications, this Court cannot determine if certain communications are privileged or contain both privileged and non-privileged information that is inextricably intertwined. A detailed privilege log is required so that Plaintiffs may address specific communications and any privileges which HCC contends applies to those communications. The Court notes that the internal communications, as to the limited areas demanded, would generally be discoverable, except to the extent that (1) the communications are of a legal nature involving HCC's counsel, or (2) discuss legal strategy in the Fox-Paine Litigation which is irrelevant to the issues in this action. 
Accordingly, HCC is directed to conduct an additional review of the internal communications demanded and, bearing in mind the holdings set forth in this Decision and Order, produce any demanded internal communications to which HCC is no longer asserting a privilege, and serve a privilege log detailing each demanded internal HCC communication which it is withholding, including the requisite information and privilege asserted as to each internal communication being withheld (see CPLR 3122[b]). This Court anticipates that HCC's objections to the internal communications demanded by Plaintiffs, as well as HCC's objections to the other categories of demanded documents, will be substantially reduced in light of this Court's holdings herein. A detailed privilege log will enable the parties to productively confer as to the withheld documents, and allow Plaintiffs to specifically address those internal communications being withheld and the claimed privilege.
J. All Communications with the Excess Carriers Relating to the Claims Under the Policy, HCC's Initial Denial, Coverage and its Subsequent Change in Coverage Position with Respect to the Paine Parties
Although Plaintiffs also purport to seek an order compelling HCC to produce all communications with the Excess Insurers, Plaintiffs did not specifically address these communications in support of the motion. Accordingly, Plaintiffs' motion is limited by its motion papers, and this Court does not consider nor determine Plaintiffs' entitlement to those communications.
K. File of Aidan McCormack, Esq., HCC's Coverage Counsel
Plaintiffs contend that HCC has an obligation to produce responsive documents from the files of Aidan McCormack. Plaintiffs note that in response to its demand for HCC's claim analyses, coverage-determination files and communications, HCC produced documents from the files of Tucker Ellis, who also represented HCC. [*27]Plaintiffs specifically allege that the communications from Mr. McCormack regarding HCC's decisions to fund the settlement of the Fox-Paine litigation, which Plaintiffs allege he later relayed to counsel for the Paine Parties, are precisely the documents that are of the utmost relevance to this litigation. 
HCC contends that most of Mr. McCormack's files consist of communications with HCC, which are protected by the attorney-client privilege; and contain information from the Paine Parties' counsel about the Fox-Paine Litigation, which is protected by the common-interest privilege. Initially, this Court notes that, as discussed previously, the common-interest privilege does not protect the communications with counsel for the Paine Parties. As to the attorney-client privilege, this Court cannot determine if the documents in Mr. McCormack's files are subject to an attorney-client privilege without an in camera review of those documents. This Court finds the HCC's remaining contentions for withholding the documents to be without merit, including (1) the argument that "there is nothing in the record to suggest that the same correspondence was not also contained in the files that Houston Casualty searched" (id. at 3); and (2) the argument that to the extent that Plaintiffs seek information relayed to the Paine Parties' coverage counsel, such information should be in the HCC files already searched.
In view of the foregoing, HCC shall conduct a further review of the documents in Mr. McCormack's files, produce any demanded documents to which they are no longer asserting the attorney-client privilege, and serve a detailed privilege log as to the remaining documents to which they assert the attorney-client privilege applies. 
CONCLUSION
The Court has considered the following papers in connection with this motion:
1) Order to Show Cause dated January 19, 2016;
2) Plaintiff's Memorandum of Law in Support of Motion to Compel, dated January 15, 2015;
3) Affirmation in Support of Motion to Compel of Jeremy C. Vest, Esq. dated January 15, 2015 together with the exhibits annexed hereto;
4) Affirmation of Susan Leddy in Support of Response to Order to Show Cause and Opposition to Motion to Compel dated January 22, 2016;
5) Affirmation of Jaren Janghorbani in Support of Response to Order to Show Cause and Opposition to Motion to Compel dated January 22, 2016;
6) Affirmation of Nakia Davis in Support of Response to Order to Show Cause and Opposition to Motion to Compel dated January 22, 2016;
7) Defendant Houston Casualty Company's Response to Order to Show Cause and Opposition to Motion to Compel dated January 22, 2016;
8) Affirmation of Robert Santoro in Support of Response to Order to Show Cause and Opposition to Motion to Compel dated January 21, 2016 together with the exhibits annexed hereto;
Based upon the foregoing papers, and for the reasons set forth above, it is hereby
ORDERED that Plaintiffs' motion seeking an order compelling Defendant Houston Casualty Company to produce complete and unredacted copies of documents responsive to Plaintiffs' First Notice of Discovery and Inspection which Plaintiffs allege were improperly withheld is granted in part and denied in part; and it is further
ORDERED that the branch of Plaintiffs' motion seeking communications among defense counsel for the Paine Parties in the Fox-Paine Litigation, HCC and its counsel, and the Excess Insurers and their counsel, which were submitted for in camera review, is granted to the extent that HCC shall produce the following within 20 days of the date of this Decision and Order: (1) the letter from Stephen Wagner, the Paine Parties' defense counsel, dated June 26, 2012; and (2) the subsequent emails among Mr. Wagner, HCC and the Excess Insurers and their respective counsel; and it is further
ORDERED that the branch of Plaintiffs' motion seeking to compel HCC to produce the communications between HCC and its counsel, on the one hand, and the Paine Parties' counsel and ERP and its counsel, on the other hand, relating to HCC's denial of coverage, the subsequent change in HCC's position on coverage, and the reimbursement of the Paine Parties' legal costs and funding of the settlement in the Fox-Paine Litigation is granted to the extent that, within 20 days of the date of this Decision and Order, HCC shall (1) produce the foregoing communications with any references to the defense strategy in the Fox-Paine Litigation, if any, redacted; and (2) serve a detailed privilege log regarding any documents which are withheld or redacted; and it is further
ORDERED that the branch of Plaintiffs' motion seeking to compel HCC to produce the Interim Defense Funding Agreement and any drafts of the Agreement is granted, and HCC shall produce the Interim Defense Funding Agreement and any drafts of that Agreement in its possession within 20 days of the date of this Decision and Order; and it is further
ORDERED that the branch of Plaintiffs' motion seeking to compel HCC to produce its unredacted Claims Log is granted to the extent that, within 20 days of the date of this Decision and Order, HCC shall produce, without redaction (except as authorized herein) the following entries of its Claims Log, to the extent set forth, as follows: (1) the September 19, 2012 entry by Susan Leddy, inclusive of the email of Aidan McCormack; (2) the May 16, 2012 entry by Susan Leddy with the last three sentences redacted; (3) the May 8, 2012 entry by Susan Leddy with the last two sentences redacted; (4) the March 22, 2012 and March 27, 2012 entries by Susan Leddy with only the references to the limit reserve redacted; (5) the June 6, 2011, August 6, 2012 and August 15, 2012 entries by Susan Leddy; (6) entries made by Karl Smith; and (7) the entries made by Tara Smith dated June 2, 2010 and June 4, 2008 and August 20, 2009, which do not refer to the limit reserve; and it is further
ORDERED that this Court has not considered nor determined that branch of Plaintiffs' motion which purports to seek an order compelling HCC to produce all communications with the Excess Carriers (Insurers) relating to the claims under the [*28]FPC Policy, HCC's initial denial, coverage and its subsequent change in coverage position with respect to the Paine Parties insofar as Plaintiffs failed to address that relief in their motion papers and their motion is, thereby, limited by their papers; and it is further
ORDERED that the branch of Plaintiffs' motion seeking an order compelling HCC to produce its internal communications regarding the claims under the FPC Policy, HCC's denial of coverage, subsequent change in coverage position, and reimbursement of the Paine Parties' legal costs and funding of the settlement in the underlying Fox-Paine Litigation is granted to the extent that HCC is directed to conduct an additional review of the demanded internal communications and, within 20 days of the date of this Decision and Order, produce any demanded internal communications to which they are no longer asserting a privilege and serve a privilege log detailing each demanded internal communication being withheld, including the requisite information and privilege asserted as to each internal communication; and it is further
ORDERED that the branch of Plaintiffs' motion which seeks an order compelling HCC to produce documents from the file of Aidan McCormack, Esq. of DLA Piper, its outside coverage counsel, is granted to the extent that HCC shall conduct a further review of the documents in Mr. McCormack's files and, within 20 days of the date of this Decision and Order, produce any demanded documents to which it is no longer asserting the attorney-client privilege and serve a detailed privilege log as to the remaining documents which they are withholding on the ground of privilege; and it is further
ORDERED that except as set forth above, Plaintiffs' motion shall be, and is hereby denied; and it is further
ORDERED that counsel shall appear for a status conference before this Court on June 3, 2016 at 9:30 A.M., which conference may not be adjourned except with the prior written consent of the Court.[FN5]

The foregoing constitutes the Decision and Order of this Court.
Dated: White Plains, New York
April 21, 2016
E N T E R :
_______________________
Alan D. Scheinkman
Justice of the Supreme Court



Footnotes

Footnote 1: As noted earlier, PIA was originally named as a defendant by Plaintiffs, but the Court dismissed the causes of action asserted against PIA by Decision and Order dated and entered November 24, 2014.

Footnote 2: Plaintiffs' reference to the "Fox-Paine Litigation" includes the underlying litigations, arbitration and mediation. Accordingly, the Court in this Decision will refer to all underlying litigation, arbitration and mediation as the "Fox-Paine Litigation".

Footnote 3:This Court reserves comment on the wisdom of incorporating the email into the Claims Log.

Footnote 4: Tara Smith also made entries dated June 28, 2010, September 15, 2010 and September 27, 2010, which refer to the limit reserve.

Footnote 5:The Court expects to set a final and binding date for the completion of all remaining disclosure at the June 3, 2016 conference.